UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA ROSERO,<br><br>                Plaintiff,<br><br>    -against-<br><br>PEPSICO, INC., and PEPSICO TECHNICAL OPERATIONS, INC.,<br><br>             Defendants. | **COMPLAINT**<br><br>**Docket No.:** 19-cv-10426<br><br><u>Jury Trial Demanded</u> |

MARIA ROSERO ("Plaintiff"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against PEPSICO, INC., and PEPSICO TECHNICAL OPERATIONS, INC. (together as "PepsiCo" or "the Company" or "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

<u>**NATURE OF THE CASE**</u>

1.      This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the anti-pregnancy discrimination provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA"); (ii) the anti-pregnancy discrimination provisions of the New York State Human Rights Law ("NYSHRL"); (iii) the anti-retaliation provisions of Title VII; (iv) the anti-retaliation provisions of the NYSHRL; and (v) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff, female, worked for Defendants - - an American multi-national food corporation and its subsidiary that operates several research and development laboratories for its

parent corporation throughout the United States - - from January 7, 2013 until May 14, 2018, most recently as an Associate Principal Scientist in PepsiCo's facility located in Valhalla, New York.

3.      As described below, after Plaintiff, while pregnant, on August 17, 2016, gave her direct supervisor five months' advance notice of her plan to take maternity leave, her supervisor stripped Plaintiff of her leadership and managerial responsibilities and reassigned them to colleagues who were either males or non-pregnant females, and removed Plaintiff from high-profile projects.  Then, after Plaintiff complained about it, either as acts of retaliation or pregnancy discrimination unto themselves, Defendants returned Plaintiff to a non-supervisory position after her maternity leave ended on May 24, 2017, and then her new supervisor subsequently made demeaning comments to Plaintiff about her pumping schedules at work, denied her a transfer to a position requiring greater responsibility, provided Plaintiff with her first negative year-end review, threatened Plaintiff with a performance improvement plan, and ultimately terminated Plaintiff's employment on May 14, 2018, shortly after learning of Plaintiff's second pregnancy, all in gross violation of Title VII, as amended by the PDA, and the NYSHRL.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      On February 14, 2019, Plaintiff and Defendants entered into a written agreement to toll the statute of limitations for all of Plaintiff's claims arising under, *inter alia*, Title VII, the PDA, and the NYSHRL, from February 14, 2019 through June 30, 2019.

5.      On June 24, 2019, Plaintiff, under her maiden name "Maria Diss," filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No.: 520-2019-04290.

6.      Thereafter, on September 27, 2019, at Plaintiff's request, the EEOC issued a "Notice of Right to Sue" ("Notice"), which Plaintiff received on or about September 30, 2019.

7.      Plaintiff has timely filed this Complaint within ninety days of receiving that Notice from the EEOC.

## JURISDICTION AND VENUE

8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

10.     At all relevant times herein, Plaintiff worked for Defendants in New York, and was an "employee" entitled to protection as defined by Title VII and the NYSHRL.

11.     At all relevant times herein, Defendants PepsiCo, Inc. and PepsiCo Technical Operations, Inc. were and are North Carolina corporations that maintain their principal places of business at 700 Anderson Hill Road, Purchase, New York 10577, which employ at least fifteen and thus four or more employees, and which are thus "employers" within the meaning of Title VII and the NYSHRL.

## BACKGROUND FACTS

12.     PepsiCo, Inc. is an American multinational food, snack, and beverage corporation that manufactures, markets, and distributes snack foods, beverages, and other products.

13.     PepsiCo Technical Operations, Inc. is a subsidiary of PepsiCo, Inc. that operates several research and development laboratories for its parent corporation throughout the United States, including a facility located at 100 East Stevens Avenue, Valhalla, New York 10595.

14.     On January 7, 2013, PepsiCo hired Plaintiff as a Senior Scientist, and she remained in that role until the Company promoted her to Associate Principal Scientist in or around October 2015.  Plaintiff held this position until PepsiCo terminated her employment on May 14, 2018.  In that latter role, Plaintiff's direct supervisor was Michael Imperato, Director of Analytical Sciences, and Plaintiff's primary duties consisted of managing analytical aspects of projects, reviewing and assessing data, and determining best industry standards within the proper regulatory framework pertaining to ingredient specifications.  At all times throughout her employment, Plaintiff worked at Defendants' Valhalla, New York facility.

15.     Throughout her tenure with PepsiCo before her first pregnancy, Defendants lauded Plaintiff for her accomplishments and evaluated her as meeting or exceeding expectations on all four of her annual performance reviews.

16.     Also after her promotion and prior to her first pregnancy, the Company assigned Plaintiff to work on high-profile projects, such as co-leading a global quality project, PepsiCo Quality Program ("PQP"), and working on a national project, the Food Safety Modernization Act ("FSMA").  On both projects, PepsiCo required Plaintiff to supervise a staff and provided her the opportunity to present to high-ranking members of the corporate team.

17.     On August 4, 2016, less than two weeks before Plaintiff informed the Company of her first pregnancy, its Senior Director of Analytical Sciences and Imperato's direct superior, Sandra Gifford-Steffen, informed Plaintiff that she saw Plaintiff as a "future leader" in her department.

18.     On August 17, 2016, Plaintiff informed Imperato that she was four months' pregnant with her first child and that she planned to take maternity leave beginning in January 2017.

4

19.     Shortly after she notified Imperato about her pregnancy, indeed starting early the following month, Imperato stripped leadership responsibility away from Plaintiff by reassigning, effective immediately, her tasks to male employees or female employees who were not pregnant, until eventually Imperato removed Plaintiff from the high-profile PQP and FSMA projects altogether while stripping her responsibility of managing a direct report who worked on those projects under her supervision.  Removing any doubt as to the motivation for these actions, when Imperato informed Plaintiff of these changes to her duties, he frequently made comments such as, "you know, I had big plans for you, but you had to go and change things."

20.     In early-November 2016, Imperato informed Plaintiff that she would now be reporting to a male colleague, Keith Griswold, Technical Manager, who possessed significantly less managerial experience than Plaintiff, even though just three months prior, Plaintiff was leading teams with a direct report.

21.     On November 16, 2016, Plaintiff complained to Imperato that PepsiCo had stripped her of her duties even though her performance throughout her employment demonstrated that she handled these tasks well, and that these actions seemed to be a punitive measure motivated by her pregnancy.  In response, Imperato advised Plaintiff to speak to Gifford-Steffen.

22.     Plaintiff then made the same complaint concerning unfair treatment as a result of her pregnancy to Gifford-Steffan on the following day, November 17, 2016, but Gifford-Steffen failed to take any action whatsoever in response.  Rather, Gifford-Steffen commented that Plaintiff was behaving like an "overly emotional woman."

23.     Plaintiff worked until the end of her pregnancy, gave birth on January 29, 2017, and took maternity leave from January 30, 2017 to May 24, 2017.

24.     Upon her return to work to the same position on May 25, 2017, Defendants continued not to task Plaintiff with supervisory authority over anyone else, and further did not permit her to provide input on any high-profile projects, a clear demotion from her previous position before advising Defendant of her pregnancy.

25.     Additionally upon her return and continuing for several months thereafter, Plaintiff required and took three separate twenty minute breaks on a daily basis to pump breast milk, which she performed in either a "mother's room" that the Company provided or in the locker area of the restroom on the facility's first floor.   Aware of this, Griswold began to make comments disapproving of Plaintiff's need to pump breast milk and criticizing her for taking too much time off work.   For instance, in June 2017, clearly annoyed at needing to accommodate Plaintiff's pumping schedule, Griswold asked Plaintiff how long she planned on breastfeeding, and he then began to plan meetings to which Plaintiff would have routinely been invited to attend during the times when he knew that she was scheduled to pump.

26.     Moreover, on or around June 13, 2017, in response to Plaintiff's attempt to discuss her 2017 performance objectives with Griswold so that she could return to her pre-pregnancy duties, Griswold suggested that Plaintiff's objectives did not matter because she was "gone for half of the year" and that she should consider transferring to another team.

27.     Over the next few months, from June through September 2017, Plaintiff complained to Griswold that she should be given more responsibility, just as she had prior to informing Defendant that she was pregnant and would be taking maternity leave.   On each occasion, Griswold ignored her complaints.

28.     Taking Griswold's suggestion and feeling entirely uncomfortable working under him, in December 2017 Plaintiff applied for the position of Technical Transformation Lead, a

lateral role on another team that would afford her with greater responsibility and experience to advance.  PepsiCo offered the job to a male employee instead.

29.     In late-January 2018, Plaintiff learned that she was pregnant with her second child. From this date forward, Plaintiff routinely scheduled doctor appointments approximately once or twice per month and notified Griswold that she would be arriving an hour late to work on these days as a result.

30.     On March 1, 2018, Griswold, on the Company's behalf, issued Plaintiff her first negative performance review in her five years of employment with the Company by rating her performance as below average.

31.     On May 8, 2018, when Plaintiff was seventeen weeks pregnant and showing, Griswold threatened Plaintiff with a performance improvement plan but never issued one.

32.     On May 9, 2018, Plaintiff informed her former supervisor and trusted mentor, Dr. Ming Peng, Director of Analytical Chemistry, about her second pregnancy.  Peng advised Plaintiff to stay quiet about her pregnancy and to keep her focus on the tasks assigned to her so as to avoid receiving a performance improvement plan.

33.     While Plaintiff never did receive a performance improvement plan, on May 14, 2018, Griswold, on behalf of the Company, terminated Plaintiff's employment, claiming that she: deviated from the sample plan to which she and Griswold had agreed for a particular study that she was conducting; failed to timely record the data results in her electronic lab notebook; and that as a result of both of these alleged errors, compromised the results of the study and therefore needed to be terminated.

34.     At her termination meeting on May 14, 2018, Plaintiff explained that as per the European Commission Directorate General for Health and Food Safety regulations, the data did

not need to be recorded contemporaneously so long as it was annually, and therefore, there was no breach of the regulatory standard. Plaintiff additionally explained that none of these minor incidents compromised the sample testing that she was conducting, and that it was a common practice for the data results to not be recorded in the scientists' electronic lab notebooks contemporaneously, as Griswold himself regularly failed to keep up with this practice. Yet, despite there being no adverse effect of these trivial errors, as well as that non-pregnant and/or male employees frequently committing the same errors without even a reprimand, the Company terminated Plaintiff's employment anyway.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Pregnancy Discrimination in Violation of the PDA and Title VII*

35.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

36.     Title VII, as amended by the PDA, prohibits employers from discriminating against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment, and/or limiting, segregating, or classifying employees in any way which deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the employee's status as an employee, because of an individual's sex, which includes pregnancy, childbirth, or related medical conditions.

37.     As described above, Defendants are employers within the meaning of Title VII and the PDA, while Plaintiff is an employee within the meaning of Title VII and the PDA.

38.     As also described above, Defendants discriminated against Plaintiff on the basis of her pregnancy and/or childbirth, in violation of Title VII, as amended by the PDA.

39.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, as amended by the PDA, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

40.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, as amended by the PDA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

41.     Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, as amended by the PDA, for which Plaintiff is entitled to an award of punitive damages.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Pregnancy Discrimination in Violation of the NYSHRL*

42.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43.     NYSHRL § 296(1)(a) prohibits employers, because of an employee's sex, which includes pregnancy, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

44.      As described above, Defendants are employers within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

45.     As also described above, Defendants discriminated against Plaintiff on the basis of her gender and/or childbirth, in violation of the NYSHRL.

46.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

47.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
### *Retaliation in Violation of Title VII*

48.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49.     Title VII prohibits employers from discriminating against an employee because the employee has in good faith opposed any practice made an unlawful employment practice under Title VII.

50.     As described above, Defendants are employers within the meaning of Title VII, while Plaintiff is an employee within the meaning of Title VII.

51.     As also described above, Defendants retaliated against Plaintiff after she lodged a good faith complaint opposing Defendants' practices forbidden under Title VII.

52.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

53.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and

emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

54.     Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*Retaliation in Violation of the NYSHRL*

55.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

56.     NYLL § 296(a)(7) provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against a person because he or she has opposed any practices forbidden under this article . . ."

57.     As described above, Defendants are employers within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

58.     As also described above, Defendants retaliated against Plaintiff after she lodged a good faith complaint opposing Defendants' practices forbidden under the NYSHRL.

59.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

60.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## **DEMAND FOR A JURY TRIAL**

61.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.     An order granting preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.     An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

d.     An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with her claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that she would have received but for Defendants' unlawful conduct;

e.     An award of damages to be determined at trial to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment in connection with her claims;

f.     An award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with her claims;

12

g.      An award of punitive damages to the extent permitted by law, commensurate with

Defendants' ability to pay;

h.      An award to Plaintiff of her reasonable attorneys' fees, as well as her costs and

disbursements incurred in connection with this action, including expert witness fees and other

costs;

i.      An award of pre-judgment and post-judgment interest, as provided by law; and

j.      Granting Plaintiff such other and further relief, including equitable relief, as this

Court finds necessary and proper.

Dated: New York, New York
       November 8, 2019

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel.    (212) 679-5000
Fax.    (212) 679-5005

By: _____
JEFFREY R. MAGUIRE (JM 1982)
ALEXANDER T. COLEMAN (AC 1717)
MICHAEL J. BORRELLI (MB 8533)